**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**



TIMOTHY B. HANKS,
      **Plaintiff,**

v.
                                             **Civil Action No. 2:11cv439**

WAVY BROADCASTING, LLC, *et al.*
      **Defendants.**

## OPINION AND ORDER

In the instant action, Plaintiff Timothy B. Hanks ("Plaintiff") seeks to sue Defendants

Wavy Broadcoasting, LLC, and Lin Television Corporation ("Defendants") for alleged libel, libel

per se and libel per quod.   This matter is currently before the Court on a Motion to Dismiss filed

by Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6).   For the reasons set forth

below, the Court **GRANT** Defendant's Motion to Dismiss in its entirety and **DISMISSES**

Plaintiff's Complaint with prejudice.

## I.    Factual and Procedural Background

### A. Factual Allegations

#### a. *The Complaint*

As alleged in Plaintiff's August 8, 2011 Complaint, Plaintiff is a professional tax preparer

in a tax preparation business.   Compl. ¶ 9.   Defendant LIN owns and operates the television

stations WAVY-TV Channel 10 ("Wavy-10") and a Fox-affiliated "sister station."   Compl. ¶¶

3-4.   Defendant Wavy Broadcasting is a wholly-owned subsidiary of LIN.   Mot. Dismiss 2.   On

April 14, 2011, Defendants broadcast a television video news segment ("Newscast") through

Wavy-10 and the Fox station and published an accompanying article ("Article") on the Internet on

www.wavy.com.   Compl. ¶ 10.   Plaintiff alleges that the previews (Plaintiff refers to these as

lead-ins or "teasers") to the Newscast, the Newscast, and the Article falsely stated, inter alia, the

following:

1.   "Stay tuned and we are going to show you how to avoid unscrupulous tax preparers."
   Compl. ¶ 10.

2.   "Monday April 18th, is this year's federal income tax filing deadline.   But if you're one
   of the many who have waited until the last minute to file, you could run the risk of
   working with unscrupulous preparers . . . .".   Id.

3.   "Kenneth Brown says he trusted his tax preparer, only to learn a year later that errors
   will cost him dearly," and "his IRS issues all stem from a mistake made by his tax
   preparer at Reliable Tax off Victory Boulevard in Portsmouth."   Id.

4.   The newscast showed Kenneth Brown stating, "If the money looks too good, chances
   are someone made a mistake;" "I gave you $400.   You're only going to give me $54
   back of the $400 I paid you all.   I said that's not fair."   Id.

Plaintiff alleges that, taken in context of the rest of the broadcast, the false implications of

the foregoing statements were that "the plaintiff was an 'unscrupulous tax preparer' who had

unlawfully converted customers' income tax refund payments, or unlawfully withheld payments

owed to customers, or fraudulently filed false tax returns for customers."   Id.

In addition to the Newscast, Plaintiff's Complaint alleges that the Article posted on

www.wavy.com, which included the broadcast video segment as well, also contained the same

defamatory statements mentioned above.   Id.   The Article was published on April 14, 2011, at

4:47 p.m. and updated the same day at 5:53 p.m.   Compl. Ex. A.   Titled "Avoiding last minute

tax preparer errors – Do it yourself, or visit a tax preparer you trust," the Article opens as follows:

"Monday, April 18th, is this year's federal income tax deadline.   But if you're one of the many

who have waited until the last minute to file, you could run the risk of working with unscrupulous

2

preparers or even increasing your chances of mistakes." Id.  The Article goes on to discuss how Kenneth Brown's tax preparer made a mistake:

> "Kenneth Brown says he trusted his tax preparer, only to learn a year later that errors will cost him dearly…Brown says his IRS issues all stem from a mistake made by his tax preparer at Reliable Tax off Victory Boulevard in Portsmouth. Brown said the numbers were put in the wrong place, and the owner of Reliable Tax said a typo was made.  The social security tax was entered in the space for income tax.  'If the money looks too good, chances are someone made a mistake. You should question before you leave out of the building,' said Brown.  Later the owner called and said, 'someone made a typing error.'  Brown was paid interest in the amount of $54 which is required by law, but Brown wants a Reliable Tax refund.  'I gave you $400.  You're only going to give me $54 back of the $400 I paid you all.  I said that's not fair,' Brown said."  Id.

The Article closes with a description of new IRS initiatives designed to give taxpayers a better experience with tax preparers, tells readers they can request a tax extension, and provides a link for free tax help and IRS forms.  Id.

The Newscast video segment referenced in the Complaint and posted along with the Article does not use the language "you could run the risk of working with unscrupulous tax preparers."  Id.; see http://www.wavy.com/dpp/news/local_news/Avoiding-last-minute-tax-preparer-errors.  Indeed, the word unscrupulous is not used once.  Rather, the Newscast opens talking about a costly tax mistake and error and relays in broadcast format substantially the same story regarding Kenneth Brown as in the Article.  Id.

### b.  Newscast Video Clips

In their Motion to Dismiss, Defendants have provided the Court with video clips of the alleged defamatory Newscast in the several variations in which it appeared on air and the corresponding Newscast previews.  Defendants argue that the Court may consider all publications alleged in the Complaint because the Fourth Circuit has held that, although as a general rule

extrinsic evidence should not be considered at the 12(b)(6) stage, when a defendant attaches a document to its motion to dismiss, "a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." American Chriopractic Assoc., Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (quoting Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)).

With regard to defamation cases, the First Circuit has upheld a district court's decision to consider material submitted by a defendant in a defamation case when an article containing the defamatory statements was "not merely referred to in plaintiffs' complaint but was absolutely central to it." Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1014-15 (1st Cir. 1988). In Penthouse, the First Circuit stated that the plaintiffs would have had to offer a copy of the article in order to prove their case. In that case, the plaintiffs did challenge the authenticity of the copy of the article submitted by Penthouse, and the Court ruled that the plaintiffs suffered no prejudice from their lack of opportunity to submit additional evidentiary materials. Id. at 1015. The First Circuit held that "nothing [the plaintiffs] could have introduced could have affected the disposition of the purely legal questions that the motion to dismiss raised about the article itself." Id.

The Court faces a similar situation in the case presently before it. Plaintiff clearly relies on the Newscast previews and Newscast itself in his Complaint. Indeed, they are central to Plaintiff's claim of defamation. Plaintiff has not challenged the authenticity of the exhibit provided by Defendants. However, Plaintiff states that it is incomplete because it does not include several other Newscast previews and Newscasts from throughout the day on April 14,

4

2011.[1]  Pl.'s Opp'n Br. 2-3.  Plaintiff also states that the exhibit is inaccurate because it does not

include the previews that Plaintiff alleges he heard as stated in the Complaint, and for which he

provides affidavits from other witnesses who state they heard previews that used language similar

to that described in the Complaint.  Since several Newscasts and previews are allegedly missing,

the Court will not consider Defendants' exhibit in ruling on this Motion to Dismiss.

It is clear that in his Complaint Plaintiff has not provided the Court with all of the

statements made in the Newscast.  Plaintiff uses an ellipsis, which indicates that text is missing,

and the Court would not determine the entire context in which the allegedly defamatory statements

were made, as Plaintiff asks the Court to do, if the Court relied solely on the text provided by

Plaintiff in his Complaint.  Compl. ¶ 10; Pl.'s Br. 4.  As Plaintiff admits in his brief in response to

Defendants' Motion to Dismiss, "Even 'where only a portion of a publication is alleged to be

defamatory, rather than the work as a whole, it is still necessary to view the entire publication.'"

Pl.'s Br. 5 (citing Rodney A. Smolla, Law of Defamation § 4:17 (2d ed. 2011)).[2]  Even though

Plaintiff does not provide the Court with the entire transcript of the Newscast or a video copy of the

Newscast, Plaintiff does refer to the version of the Newscast posted on the internet with the Article

as discussed above.  Id.  The Court has viewed this complete Newscast, and it provides the

necessary context for the statements that were made.  In any event, the Court finds that while

Defendants' exhibit certainly would be helpful for presenting a more complete picture of the

---

1 Plaintiff also claims that Defendants' exhibit is missing Newscast previews and Newscasts from April 15, 2011.
However, that argument stretches beyond the scope of the facts alleged in the Complaint, in which Plaintiff only
alleges defamatory statements made on April 14, 2011.  Therefore, the Court has only considered the Newscast
previews and Newscasts from April 14, 2011.
2 The Court finds it noteworthy that Plaintiff urges the Court to view the allegedly defamatory statements in context
by viewing the entire publication.  Yet, Plaintiff did not provide the Court with the entire publication and
subsequently objected to Defendants' attempt to provide the Court with it.

Newscasts, it is unnecessary because Plaintiff has not pled facts sufficient to sustain this cause of action for defamation as discussed further below.

### c. *Judicial Notice*

In their Motion to Dismiss, Defendants also argue that the Court may consider matters that are subject to judicial notice. Specifically, Defendants ask the Court to take judicial notice of the fact that Plaintiff is the President of Reliable Tax. Under Federal Rule of Evidence 201(b), a court may take judicial notice of facts capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. A court shall take judicial notice if requested by a party and supplied with the necessary information, and the court may take judicial notice at any stage of the proceeding. Fed. R. Evid. 201(d), (f).

In support of their request for the Court to take judicial notice of the fact that Plaintiff is the President of Reliable Tax, Defendants performed a Corporate Data Inquiry, Officers/Directors Inquiry, and Principal Office Inquiry for Reliable Tax & Financial Services, Inc., which is available from the Commonwealth of Virginia's State Corporation Commission's website. See https://cisiweb.scc.virginia.gov/z_container.aspx. The records of the Virginia State Corporation Commission reveal that Reliable Tax & Financial Services, Inc., is a duly organized Virginia stock corporation and that Timothy B. Hanks, Plaintiff, is the President of the corporation. See Defs.' Ex. 2. Information that "is readily accessible through the State Corporation Commission's website" is a matter of public record, of which the Court may take judicial notice. Wynne v. Birach, No. 1:09CV15, 2009 WL 3672119, at *1 n.3 (E.D. Va. Nov. 3, 2009); see also In re PEC Solutions, Inc. Securities Litigation, 418 F.3d 379, 390 & n.10 (4th Cir. 2005) (noting that Court of Appeals can take judicial notice of documents publicly filed by corporation with the Securities and

6

Exchange Commission when considering a motion to dismiss).

The fact that Plaintiff is the President of Reliable tax is capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned, namely through the Virginia State Corporation Commission. Therefore, the Court takes judicial notice of this fact. This is important because nowhere in his Complaint does Plaintiff allege any facts linking him to Reliable Tax and the alleged defamatory statements made in the Newscast or Article. Since the facts as alleged do not demonstrate how Plaintiff has suffered harm on account of the Newscast or Article, the Court could dismiss this action for Plaintiff's lack of standing. However, rather than dismiss this Complaint without prejudice to give Plaintiff an opportunity to plead sufficient facts to overcome this defect in the pleadings, the Court takes judicial notice of the fact that Plaintiff is President of Reliable Tax, a company duly incorporated in Virginia that is referenced in both the Newscast and Article, so that it may proceed to the merits of this 12(b)(6) motion.

### B. Procedural Background

On August 8, 2011, Plaintiff filed his Complaint in this defamation suit and seeks compensatory damages in the amount of five million dollars plus interest. Compl. 8. Plaintiff's Complaint alleges libel, libel per se and libel per quod. Compl. ¶¶ 19, 21, 24.

On September 29, 2011, Defendant filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Plaintiff filed a timely Memorandum in Opposition to Defendant's Motion to Dismiss on October 13, 2011, and Defendant filed a timely Reply on October 19, 2011. The Motion is now ripe for

judicial resolution.


## II.   **Standard of Review**

### A.  Rule 12(b)(6) Motion

A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency a complaint, and the court assumes the truth of all facts alleged in the complaint and the

existence of any fact that can be proved, consistent with the complaint's allegations.   See Hishon

v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Although the court must take the facts in the light most favorable to the plaintiff, it need not accept

the legal conclusions drawn from the facts.   See Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir.

1991).   Furthermore, the Court "need not accept as true unwarranted inferences, unreasonable

conclusions or arguments."   Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc., 591 F.3d 250,

253 (4th Cir. 2009).   The court should deny a motion to dismiss unless "it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

De Sole v. United States, 947 F.2d 1169, 1177 (4th Cir. 1991); see also Migdal v. Rowe

Price-Fleming Int'l, Inc., 248 F.3d 321, 325 (4th Cir. 2001).

Federal Rule of Civil Procedure 8(a)(2) requires only that a pleading contain "a short and

plain statement of the claim showing that the pleader is entitled to relief."   The facts upon which a

complaint is based need not be set forth in detail.   See Conley v. Gibson, 355 U.S. at 47.   The

Supreme Court's decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft

v. Iqbal, 129 S. Ct. 1937 (2009), have clarified how the sufficiency of a complaint is to be

evaluated under Rule 8.   Under these cases, there are two essential requirements for a pleading:

that its allegations be sufficient and that its allegations be plausible.

In evaluating a complaint under Twombly and Iqbal, a district court must engage in a two-step process.   First, the court must begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1949.   In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.   Second, the court must decide whether the remaining allegations in the complaint—taken as true—state a "plausible claim for relief." Id. (quoting Twombly, 550 U.S. at 570).   This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense" to decide whether the facts "permit the court to infer more than the mere possibility of misconduct." Id. at 1950 (citing Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007)).   In essence, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

## III.   Defendant's Motion to Dismiss

### A.   Counts I and II – Libel per se and Libel

Under Virginia common law, in order to sustain a suit for libel and libel per se, a plaintiff must allege "a publication of false information concerning the plaintiff that tends to defame the plaintiff's reputation." Hatfill v. New York Times Co., 416 F.3d 320, 330 (4th Cir. 2005).   "The elements of libel are (1) publication of (2) an actionable statement with (3) the requisite intent." Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993).   "Whether a statement is actionable is a matter of law to be determined by the court." Id. (citing Chaves v. Johnson, 335

S.E.2d 97 (Va. 1985)).   Under Virginia law, the following kinds of statements are actionable as

defamation per se: (1) statements that "impute to a person the commission of some criminal

offense involving moral turpitude, for which the party, if the charge is true, may be indicted and

punished," (2) statements that "impute that a person is infected with some contagious disease,

where if the charge is true, it would exclude the party from society," (3) statements that "impute to

a person unfitness to perform the duties of an office or employment of profit, or want of integrity in

the discharge of duties of such an office or employment," and (4) statements that "prejudice such

person in his or her profession or trade." Hatfill, 416 F.3d at 330 (citing Carwile v. Richmond

Newspapers, Inc., 82 S.E.2d 588, 591 (Va. 1954).   In this case, Plaintiff alleges that Defendants'

statements in the Newscast previews, Newscast, and Article are libelous per se because they

impute an unfitness to perform the duties of office or employment for profit, a lack of integrity in

the discharge of duties of such office, and the commission of a criminal offense.   Compl. ¶ 19.

### a. The "Of or Concerning" Test

Importantly for this case, in order for a statement to be actionable as defamation in

Virginia, "a libel plaintiff must show that the alleged libel was published 'of or concerning' him."

Gazette, Inc. v. Harris, 325 S.E.2d 713, 738 (Va. 1985) (citing Cave v. Shelor, 16 Va. (2 Munf.)

193 (1811).   The plaintiff does not have to be mentioned by name in the publication.   Id.

Rather, the "of or concerning" test is satisfied if the plaintiff shows that "the publication was

intended to refer to him and would be so understood by persons reading it who knew him."   Id.

Therefore, "if the publication on its face does not show that it applies to the plaintiff, the

publication is not actionable, unless the allegations and supporting contemporaneous facts connect

the libelous words to the plaintiff."   Id.   Otherwise, any plaintiff could "adopt and apply to

himself any libelous matter and obtain a recovery." Id.

In the present case, neither the Newscast preview, the Newscast, nor the Article refer to Plaintiff by name.   Additionally, it is clear that none of the three publications intended to refer to Plaintiff directly.   Rather, they refer directly to Reliable Tax, a corporation.   In this context, Virginia courts have held that a corporation "is itself the only person entitled to recover for injuries to its business, profits, or property.   Its stockholders have no standing to sue in their own right for an injury to the corporation on the ground that the injury caused a depreciation in the value of their stock, nor does an employee have standing to sue for loss of earnings resulting from a tort committed by a third party against his employer."   Landmark Communications, Inc. v. Macione, 334 S.E.2d 587, 589 (Va. 1985) (citing Keepe v. Shell Oil, 260 S.E.2d 722, 724 (1989)).   In Landmark, the Court applied this principle in a defamation case and found that a corporation owner's failure to show damages to himself, as opposed to those his corporation may have suffered as result of newspaper employee's allegedly defamatory statement concerning the owner to a corporate client precluded the publisher's liability to the corporation's owner in an action for slander.   Id.

The Landmark decision would not prevent Plaintiff from demonstrating damages he may have suffered from allegedly defamatory statements or that they are defamation per se.   However, the facts as pleaded in the Complaint do not establish a cause of action for Reliable Tax as discussed further below, and Plaintiff has not pleaded any facts demonstrating how he could be affected by statements made concerning the reputation of Reliable Tax.   Even taking judicial notice of the fact that Plaintiff is President of Reliable Tax, nothing in the Complaint indicates how statements made about Reliable Tax can be imputed to Plaintiff as discussed below.   The

11

publications either refer to tax preparers generally or they discuss one specific interaction with Reliable Tax. The Complaint does not allege an actionable reference to Timothy Hanks, and absent the fact that the Court has taken judicial notice that Plaintiff is the President of Reliable Tax, the Court would not have been able to establish any connection between the statements made and Plaintiff.

Under Virginia law, references to tax preparers as a class generally will not sustain a cause of action for defamation. See generally, Ewell v. Boutwell, 121 S.E. 912 (Va. 1924). "If defamatory words are used broadly in respect to a general class of persons, and there is nothing that points, or by colloquium or innuendo can be made to apply, to a particular member thereof, such member has no right of action." Id. at 914. Thus, the Newscast previews that allegedly mention "unscrupulous tax preparers" without more are not actionable for defamation. In this context, Plaintiff argues that the statements made in the three publications are defamatory per se in that they impute to him unfitness to perform duties of office or employment. Relying on Gazette v. Harris, Plaintiff argues that he "need not show that he was mentioned by name in the publication." 325 S.E.2d 713, 738 (Va. 1985). Indeed, a defamatory charge may be made expressly or by "inference, implication or insinuation." Hatfill v. New York Times Co., 416 F.3d 320, 331 (4th 2005) (citing Carwile v. Richmond Newspapers, Inc., 82 S.E.2d 588, 592 (Va. 1954).

Plaintiff argues that the allegedly defamatory statements taken in context, that is the Newscast previews combined with the Newscast that mentions Reliable Tax, can be understood to implicate him. He argues that the public would infer, and that Defendants insinuated, that the statement regarding unscrupulous tax preparers was meant to refer to Reliable Tax and,

12

consequently, to Plaintiff as well.   Regarding the meaning and use of the word "unscrupulous,"

Virginia courts have held, "It matters not how artful or disguised the modes in which the meaning

is concealed if it is in fact defamatory."   Carwile, 82 S.E.2d at 592.   Thus, the Fourth Circuit has

held that courts applying Virginia defamation law should consider not only the words themselves

but also the "inferences fairly attributable" to them.   Wells v. Liddy, 186 F.3d 505, 523 (4th

Cir.1999).   Furthermore, the Fourt Circuit stated in Chapin that "a libel-by-implication plaintiff

must make an especially rigorous showing where the expressed facts are literally true.   The

language must not only be reasonably read to impart the false innuendo, but it must also

affirmatively suggest that the author intends or endorses the inference."   Chapin v.

Knight-Ridder, Inc., 993 F.2d 1087, 1092-93 (4th Cir. 1993).

Plaintiff accurately states that this Court must view the allegedly defamatory statements in

context—with "all the surrounding facts and circumstances…taken into consideration…and the

whole case…looked at in the light of its own particular facts."   See Zayre of Va., Inc. v. Gowdy,

207 Va. 47, 50 (1966).   In this case, even considering the inferences of the statements taken in

context, no reading of the allegedly defamatory statements can demonstrate that the publication

was intended to refer to Plaintiff and would be so understood by persons reading it who knew him.

The facts as laid out in the Complaint are quite clear.   The Newscast previews stated that they

were going to show viewers how to avoid unscrupulous tax preparers.   These previews cannot be

read to refer to Plaintiff in any way.   Rather, they refer to tax preparers as a class.

Similar to the Newscast previews, the Article uses the word unscrupulous to refer to tax

preparers generally at the very beginning.   However, it uses the word as part of a disjunctive

phrase.   Indeed, the opening of the Article discusses two separate, distinct risks readers may face

13

if they wait until the last minute to file their taxes: 1.) they run the risk of working with

unscrupulous tax preparers; or 2.) they run the risk of increasing their chances of mistakes.   It is

clear from the text of the Article that these two risks are separate.   It is also clear from the next

paragraph of the Article that the remainder of the text is going to revolve around an error made by

Kenneth Brown's tax preparer, not unscrupulous tax preparers.   The Article focuses solely on the

error made by Kenneth Brown's tax preparer at Reliable Tax.   The owner of Reliable Tax is

quoted as stating that someone did actually make a typographical error.   As a result of that error,

Brown owed more money to the IRS, and he was upset that Reliable Tax did not give him a refund

because of the mistake its employee made.   Reliable Tax indicated it paid the interest it was

required to by law.   This news story is clearly about a mistake that was made.   Although the

opening mentions unscrupulous tax preparers, no fair reading of the Article can impute that

characterization to Reliable Tax, let alone to Plaintiff.   Furthermore, where as here the facts stated

about the error are true, no reader could infer that the language used affirmatively suggests that the

author intends or endorses such an inference.

As indicated in the Factual Background, a complete version of the Newscast appears on the

internet on Wavy10's website and was referenced in the Complaint.   A review of this Newscast

reveals that the word unscrupulous is not used once.   Instead, the broadcast focuses solely on the

story of Kenneth Brown.   The newscasters introduce the story by stating, "A costly tax

mistake…the longer you wait, the greater the risk for error…how the IRS came after one man after

an innocent mistake."   The rest of the Newscast proceeds to relay the story as it is told in the

Article and includes an interview with Kenneth Brown.   Even taking this Newscast in the context

of the Newscast preview that allegedly preceded it, no viewer could reasonably infer that

14

Defendants intended to endorse an inference that Reliable Tax or Plaintiff were unscrupulous.

Contrary to Plaintiff's assertions, a plain reading of the Article and viewing of the Newscast reveals that absolutely no reasonable person would infer that the language used in these publications affirmatively suggests that Defendants intended to or did endorse an inference that Plaintiff was an "unscrupulous tax preparer who had unlawfully controverted customers' income tax refund payments, or unlawfully withheld payments owed to customers, or fraudulently filed false tax returns for customers." Not only is there absolutely no reference to stolen refund payments or fraudulently filed tax returns, there is no insinuation that Reliable Tax engaged in any unscrupulous or illegal conduct. Furthermore, there is no direct or indirect reference to Plaintiff. Plaintiff attempts to argue that Brown's statement, "I gave you $400. You're only going to give me $54 back of the $400 I paid you all. I said that's not fair," implies that Brown was not paid a refund when he was entitled one. That reading of the Article and Newscast, however, completely ignores the context in which that statement was made and completely disregards the rest of the content of the Article and Newscast. It is clear from the publications in this case that Reliable Tax gave Mr. Brown the money it was required to by law. It was Mr. Brown's opinion that he should have gotten a refund based on the mistake made by his preparer—a mistake Reliable Tax's owner readily acknowledges and admits was made. Thus, the Article and Newscast, taken in context of the previews, merely relay the story of a tax preparer's mistake—as the title of the Article so clearly indicates.

Based on this analysis, the Court finds that Plaintiff's Complaint fails the "of or concerning" test. Plaintiff has not pleaded sufficient facts to demonstrate that the allegedly defamatory statements either directly or indirectly—through inference or by implication—refer to

15

him.  For this reason alone, the Court could grant Defendants' Motion to Dismiss.  However, as

outlined below, the Court also demonstrates that the statements in the Complaint are incapable of

defamatory construction even if Plaintiff could have demonstrated they referred to him.

### b.  *Constitutionally-Protected Opinion*

Courts in the Fourth Circuit apply a four-factor test to determine whether a particular

statement constitutes constitutionally-protected opinion.  They consider the following: (1) the

author or speaker's choice of words; (2) whether the challenged statement is capable of being

objectively characterized as true or false; (3) the context of the challenged statement within the

writing or speech as a whole; and (4) the broader social context into which the statement fits.

Potomac Valve, 829 F.2d 1280, 1287-88 (citing Ollman v. Evans, 750 F.2d 970 (D.C. Cir 1984));

see also Chapin, 993 F.2d at 1093 (describing Potomac Valve as "presaging" the Supreme Court's

decision in Milkovich v. Lorain Journal Co., 497 U.S. 1, 19 (1990)).  The second factor is a

minimum threshold issue that all Plaintiffs must meet to sustain a cause of action—if words cannot

be described as true or false, they are not actionable.  Id. at 1288; see also Biospherics, Inc. v.

Forbes, Inc., 151 F.3d 180, 184 (recognizing that Milkovich, like Potomac Valve, placed "primary

emphasis...on verifiability of the statement," but Fourth Circuit also examines "context" and

"general tenor").  However, even if a statement is objectively verifiable, it "nevertheless qualifies

as an 'opinion' if it is clear from any of the three remaining Ollman factors, individually or in

conjunction, that a reasonable reader or listener would recognize its weakly substantiated or

subjective character – and discount it accordingly."  Id.  The Fourth Circuit further noted that

"As Thomas Jefferson observed in his first Inaugural Address, in a passage quoted by Justice

Powell in Gertz, error of opinion need not and ought not be corrected by the courts 'where reason

16

is left free to combat it.'" Id. at 1289-90. That comment is particularly apt for this case—simple

reason applied by a viewer or listener of these statements would erase any inkling of a notion that

they are defamatory either directly or indirectly.

An analysis of Virginia law reveals many decisions in which Virginia courts have rejected

claims alleging unflattering, but nonetheless protected, expressions. For example, in Chaves v.

Johnson, the Virginia Supreme Court affirmed a trial court's decision setting aside a jury verdict

based on a defamation claim. 335 S.E.2d at 98. The plaintiff, an architect, sued based on a

competitor's letter to the Fredericksburg City Council claiming the plaintiff had "no past

experience" and was being paid "an unjustifiably high fee." Id. at 99. The Virginia Supreme

Court found that these statements constituted non-actionable opinion because "a charge of

inexperience is in its nature a relative statement" and "a charge that professional fees are excessive

is largely dependent upon the speaker's viewpoint." Id. at 101. Other decisions have found that

opinions about a plaintiff's character or conduct cannot form the basis for a defamation claim.

See, e.g., Chapin, 993 F.2d at 1093 (finding that plaintiff and charity he ran could not maintain

defamation on claim on statements, inter alia, that charity's president was "veteran charity

entrepreneur," and that the charity was "charging hefty mark-ups," notwithstanding contention

that it implied that charity was making large profit and pocketing it); Taylor v. CNA Corp.,

1:10CV181, 2010 WL 3430911, at *15 (E.D. Va. Aug. 27, 2010) (finding coworkers' statements

that plaintiff was "intimidating" and "bullying" not capable of defamation); Key v. Robertson, 626

F. Supp. 2d 566, 582 (E.D. Va. 2009) (ruling that press release charging plaintiff with

"manipulat[ing]" photo was non-actionable opinion); Marroquin v. Exxon Mobil Corp., 08CV391,

2009 WL 1429455, at *9 (E.D. Va. May 27, 2009) (finding defendant's characterization of

17

plaintiff's conduct as "very bad," "inappropriate," and "improper" were "an opinion of the scope and magnitude of Plaintiff's wrongdoing that cannot be proven false"); American Commc'ns Newtork, Inc. v. Williams, 568 S.E.2d 683, 686 (Va. 2002) (reversing jury verdict and finding statements company "failed to establish effective operations" and lacked "appropriate infrastructure" were non-actionable opinion); Jarrett v. Goldman, 67 Va. Cir. 361, 2005 WL 1323115, at *8, 10 (May 31, 2005) (finding, inter alia, that statements asserting plaintiff "screwed up" and was "incompetent" were non-actionable opinion); Lamb v. Weiss, 62 Va. Cir. 259, 2003 WL 23162338, at *5-6 (sustaining demurrer as to statements that coworker had "spen[t] too much money on advertising" and was "incompetent"). This review of Virginia case law demonstrates that Virginia courts have held that characterizations of a business's performance or a professional's character are generally considered to be expressions of opinion and are thus protected speech.

### c. "Unscrupulous" Is Not Defamatory

Turning to an examination of the word unscrupulous in particular and whether it is capable of defamatory construction, Virginia courts have held that "the meaning of the alleged defamatory language cannot, by innuendo, be extended beyond its ordinary and common acceptation. The province of the innuendo is to show how the words used are defamatory, and how they relate to the plaintiff, but it cannot introduce new matter, nor extend the meaning of the words used, or make that certain which is in fact uncertain." Carwile, 82 S.E.2d at 592. Thus, the general rule of interpretation is that "allegedly defamatory words are to be taken in their plain and natural meaning and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used." Id. at 591-92. In this case, the

18

Court need not consider any innuendo concerning the word unscrupulous.   Taken in its plain and natural meaning, unscrupulous is defined as "devoid of scruples; oblivious to or contemptuous of what is right or honorable."   (The American Heritage Dictionary of the English Language (3d ed. 1992)).   Webster's defines it as "not scrupulous: unprincipled." (Webster's Third New International Dictionary (2002)).   There is no doubt that it is an unflattering characterization.

Other courts have found that unscrupulous and words with similar meanings are not actionable for defamation.   For example, in Lauderback v. American Broadcasting Companies, Inc., the Eighth Circuit held that any representation in a television broadcast that an insurance agent was guilty of unethical behavior was understandable as opinion protected by the First Amendment.   741 F.2d 193 (8th Cir. 1984).   In that case, the television broadcast of the national show 20/20 used the terms "rotten," "unethical," and "sometimes illegal" to describe the certain practices of insurance agents.   Id. at 195.   The insurance agents themselves were even referred to as "crooks" and "liars."   Id.   The Court found that, even though the broadcast as a whole portrayed the plaintiff "as a less than honest or scrupulous insurance agent," it indicated the network's opinion of the plaintiff's dealings and was not a "bald accusation of criminal activity." Id. at 196.   This matter came to the Eighth Circuit on interlocutory appeal, and it reversed the trial court's denial of summary judgment because it found that "the impression left by the broadcast, that [the plaintiff] was dealing unscrupulously with senior citizens, is more analogous to a 'broad, unfocused, wholly subjective comment'…"   Id. at 197; see also White v. Berkshire-Hathaway, Inc., 802 N.Y.S.2d 910 (N.Y. Sup. Ct. 2005) (holding that headline "unscrupulous operation gouges nursing home" was not defamatory as a matter of law).

Presented with a similar situation, the Ninth Circuit held that a Time magazine article

19

which contained an inference that a lawyer's "morality or legal abilities were doubtful, or that he was unreliable and disreputable, is a broad, unfocused, wholly subjective comment, not the kind of factual expression for which the Constitution permits liability to be imposed." Lewis v. Time Inc., 710 F.2d 549, 554 (9th Cir.1983), overruled on other grounds by Unelko Corp. v. Rooney, 912 F.2d 1049, 1052–53 (9th Cir.1990). The Ninth Circuit found that the comments made in the article were constitutionally protected opinion, because the article set forth the facts underlying the opinion. Id. In other analogous cases, courts have rejected the notion that evocative opinions about the plaintiff's business practices could amount to defamation. See, e.g., Phantom Touring v. Affiliated Publ'ns, 953 F.2d 724, 728, 730-31 (1st Cir. 1992) (holding that description of theatre production as "a rip-off, a fraud, a scandal, a snake-oil job" was no more than "rhetorical hyperbole"), cited with approval in Biospherics, 151 F.3d at 185; Wait v. Beck's N. America, Inc., 241 F. Supp. 2d 172, 183 (N.D.N.Y. 2003) ("Statements that someone has acted unprofessionally or unethically generally are constitutionally protected statements of opinion."); Henderson v. Times Mirror Co., 669 F. Supp. 356, 359-62 (D. Colo. 1987) (dismissing defamation claim, finding that statements referring to a sports agent as a "sleazebag" and "slime" were protected opinion).

The Court finds the reasoning in these opinions to be persuasive. Additionally, the Court has considered the other Ollman factors—the author's choice of words, the context of the challenged statement within the writing or speech as a whole, and the broader social context. Considering that there was increased public awareness with the tax filing deadline around the corner, and taken both in context and by itself in the publications subject to the Complaint presently before the Court, the word unscrupulous, as it was used, was a broad, unfocused, and

wholly subjective comment.   The Court finds that the average viewer using his or her own reason

and judgment would not conclude from viewing the Newscast preview, the Newscast, and Article,

either individually or in combination with each other, that Defendants were calling Plaintiff

unscrupulous.   Even if the average viewer would conclude that these publications portrayed

Plaintiff as a less than honest or unscrupulous tax preparer, however, the Court concludes that this

portrayal constitutes protected opinion.   It is not an accusation of criminal activity as Plaintiff

suggests.   Therefore, since these allegedly defamatory statements are opinion, the Court must

dismiss Counts I and II of the Complaint.

### d.  Actual Malice

Finally, Count I of the Complaint fails for an additional reason.   Libel per se differs from

general libel in that the person defamed is presumed to have suffered general damages.   See

Stamathis v. Flying J, Inc., 389 F.3d 429, 440 (4th Cir. 2004).   However, in Virginia, "where a

private individual alleges defamation by a news-media defendant involving a matter of public

concern, presumed damages cannot be awarded in the absence of actual malice."   WJLA-TV v.

Levin, 564 S.E.2d 383, 391-92.   Actual malice is a First Amendment standard that requires that

"the plaintiff show that the defendant knew the publication to be false or evidence reckless

disregard for the truth."   New York Times v. Sullivan, 376 U.S. 254 (1964).   In order to survive a

12(b)(6) motion to dismiss, a pleading must offer more than labels and conclusions or a formulaic

recitation of the elements of a cause of action.   See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

(2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   Since Iqbal and

Twombly, in cases where a defamation claim requires a showing of actual malice, courts in the

Eastern District of Virginia have found that "conclusory allegations regarding the [defendants']

intent...are insufficient to survive a motion to dismiss." See Zhang v. Regan, 1:10CV1329, 2011 WL 1456188, at *8 (E.D. Va. Apr. 14, 2011); see also Echtenkamp v. Loudoun County Public Schools, 263 F. Supp. 2d 1043, 1062 (E.D. Va. 2003) ("[P]laintiff's repeated assertions that each defendant charged with defamation acted 'with malice' and with 'motive of personal spite and revenge' are not, by themselves, sufficient to state a claim.").

This suit does involve a private individual alleging defamation by a news-media defendant, and Plaintiff does seek presumed damages in Count I. Therefore, Plaintiff must demonstrate actual malice by Defendants beyond mere conclusory allegations. In this regard, Plaintiff's Complaint fails. As in Echtenkamp, Plaintiff here merely makes repeated boilerplate assertions that "the defendants made the statements knowing they were false and with reckless disregard for the truth or falsity, and after having been put on notice that the statements relating to the plaintiff were false." Compl. ¶ 14. Plaintiff provides no facts in his Complaint to substantiate his claim that he put Defendants on notice. As such, this boilerplate language is a mere allegation. Indeed, this is simply a recitation of the New York Times v. Sullivan standard. Merely pleading the standard for actual malice in the Complaint without more is insufficient to state a claim. Since Plaintiff fails to adequately plead actual malice, the Court dismisses Count I on this additional basis.

For the foregoing reasons, the Court dismisses Counts I and II because the Plaintiff has not pled sufficient facts to demonstrate how the Newscast previews, the Newscast, or the Article are reasonably capable of being understood to convey a defamatory accusation that Plaintiff is an unscrupulous tax preparer.

**B. Count III – Libel per Quod**

In addition to claims of libel and libel per se, Plaintiff has filed a claim of libel per quod. This type of libel refers to a publication that is not libelous on the face of the communication, but becomes libelous in light of extrinsic facts known by the recipient of the communication. 50 Am. Jur. 2d, Libel and Slander § 145 (2011). Libel per quod requires proof of special damages, which are those damages "occasioned by the special character, condition, or circumstance of the person wronged; they are not presumed by the injury, they must be specially pleaded, and they must be proved by competent evidence." Id.

Here, aside from including in Count III the statement that "with reference to extrinsic facts," Plaintiff merely repeats the claims made in Counts I and II. He does not plead special damages but claims the same damages as in Counts I and II. Indeed, Count III is nothing more than a threadbare recital of the elements of a cause of action for libel per quod (although it fails to even include the element of pleading special damages), and it is supported by mere conclusory statements. As the Supreme Court stated in Iqbal, 129 S. Ct. at 1949, this will not suffice to overcome a motion to dismiss under 12(b)(6). Furthermore, the court should deny a motion to dismiss unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." De Sole v. United States, 947 F.2d 1169, 1177 (4th Cir. 1991); see also Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 325 (4th Cir. 2001). The Court has found that the allegedly defamatory statements constitute protected opinion, and are, therefore, not capably of defamatory construction. Thus, the Court dismisses Count III of the Complaint as well.

23

## IV.    Conclusion

Plaintiff fails to state a claim upon which relief can be granted.   This case should not have been brought because the allegedly defamatory statements are not actionable for the following reasons: 1.) they are not of or concerning Plaintiff; 2.) they are not capable of defamatory construction; 3) they are constitutionally-protected opinion; 4) actual malice has not been sufficiently pleaded; and 5) special damages have not been sufficiently pleaded.   Any one of the first three reasons just listed alone would have been sufficient to dismiss this action.   Therefore, for the reasons set forth herein, the Court hereby **GRANTS** Defendant's Motion to Dismiss in its entirety.   Accordingly, Plaintiff's Complaint is hereby **DISMISSED** with prejudice.

The Clerk is **DIRECTED** to deliver a copy of this Opinion and Order to all Counsel of Record in this case.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge

Norfolk, Virginia
February __7__, 2012

24